UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RACHAEL V.,

                          Plaintiff,

v.                                                      3:18-CV-1346 (TWD)

COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                        PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.                      DAVID L. BROWN, ESQ.
  Counsel for Defendant
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

    Currently before the Court, in this Social Security action filed by Rachael V. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 9 and 10.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied and Defendant's motion for judgment on the

pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1969, making her 44 years old at the alleged onset date and 48 years old at the ALJ's decision. Plaintiff completed the eighth grade and obtaining a GED and cosmetology license. She reported past work as a cashier, waitress, cleaner, personal care assistant, and sales assistant. She works part-time or twice a month for a total of four hours per month. (T. 34, 49-50.)[1] Plaintiff initially alleged disability due to fibromyalgia, degenerative disc disease, a hiatal hernia, attention deficit hyperactivity disorder, depression, asthma, gastroesophageal reflux disease, and obsessive-compulsive disorder.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on February 6, 2015, alleging disability beginning February 14, 2014. (T. 55, 69, 144-50.) Plaintiff's application was initially denied on April 27, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). She appeared at an administrative hearing before ALJ John P. Ramos on June 8, 2017. (T. 30-54.) On August 9, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 7-24.) On September 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C. The ALJ's Decision

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

The ALJ found Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2016. (T. 12.) She did not engage in substantial gainful activity during the period from her alleged onset date of February 14, 2014, through her date last insured of September 30, 2016. (T. 13.) Her fibromyalgia, history of back surgery, depressive disorder, and panic disorder were severe impairments. (*Id.*) She did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings") through the date last insured. (T. 13-15.) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work and

> [m]entally, the claimant retained the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for simple tasks, and regularly attend to a routine and maintain a schedule. She could relate to and interact with others to the extent necessary to carry out simple tasks. She could also handle reasonable levels of simple work-related stress, in that she could make decisions directly related to the performance of simple work, and handle the usual work place changes and interactions associated with simple work.

(T. 15.) Sixth, the ALJ found Plaintiff was unable to perform any past relevant work through the date last insured. (T. 18.) Seventh, and last, the ALJ found Plaintiff could perform other jobs existing in significant numbers in the national economy. (T. 19.) The ALJ therefore concluded Plaintiff was not disabled at any time from the alleged onset date through the date last insured. (T. 20.)

### D. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff argues the ALJ improperly substituted his judgment for undisputed medical opinions that Plaintiff has postural limitations and would have limitation in her ability to work consistently. (Dkt. No. 9 at 10-14.) Plaintiff also argues the ALJ improperly weighed the medical opinions of treating physician Ian Stuppel, D.O., consultative examiner Amanda Slowik,

Psy.D., consultative examiner Rita Figueroa, M.D., and non-examining consultant S. Bhutwala, Ph.D., and specifically points to the issues of the need to change positions, time off-task, and absenteeism. (*Id*. at 14-22.) Finally, Plaintiff contends the Step Five determination is not supported by substantial evidence because the ALJ failed to consult with a vocational expert. (*Id*. at 22-23.)

Defendant argues substantial evidence supports the ALJ's mental RFC finding and that the ALJ did not substitute his judgment for medical opinion, but rather he properly considered the medical opinions from Dr. Slowik and Dr. Bhutwala. (Dkt. No. 10 at 7-13.) Defendant also contends substantial evidence supports the ALJ's physical RFC and the ALJ properly considered the opinions from Dr. Figueroa and Dr. Stuppel. (*Id*. at 13-18.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).


 **B.**  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether

an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.

Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental

ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

### A.     Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

#### 1.   Applicable Law

##### a.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

## 2. Opinion Evidence

In April 2015, consultative examiner Dr. Slowik observed Plaintiff was cooperative and oriented and she had adequate social skills, adequate expressive language skills, poorly developed receptive language skills, coherent and goal-directed thought process, depressed affect (she was quite tearful), dysthymic and anxious mood, fair insight, good judgment, mildly impaired attention and concentration due to distractibility and anxiety, and moderately impaired recent and remote memory skills due to emotional distress secondary to her anxiety, depression, and pain. (T. 487-88.) Plaintiff's intellectual functioning appeared to be in the below average range and her general fund of information appeared somewhat limited. (T. 488.) Dr. Slowik

diagnosed a specific learning disorder, major depressive disorder, panic disorder, and history of attention deficit hyperactivity disorder. (T. 489.) She opined Plaintiff was mildly limited in the ability to follow and understand simple directions and instructions and maintain attention and concentration; moderately limited in the ability to perform simple tasks independently, learn new tasks, make appropriate decisions and relate adequately with others; and markedly limited in the ability to maintain a regular schedule, perform complex tasks and appropriately deal with stress. (T. 488-89.) Dr. Slowik indicated these difficulties were caused by cognitive deficits, anxiety and depression and the results of the examination appeared to be consistent with psychiatric and cognitive problems which might significantly interfere with Plaintiff's ability to function on a daily basis. (T. 489.) The ALJ afforded some weight to Dr. Slowik's assessment. (T. 18.)

In April 2015, consultative examiner Dr. Figueroa noted Plaintiff appeared in no acute distress, she had a normal gait and stance, she could walk on heels and toes without difficulty, her squat was 75 percent, she used no assistive devices, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 494.) On examination, she had mild epigastric tenderness, some limited range of motion in the cervical and lumbar spine with lordosis of the lower spine, negative straight leg raising testing bilaterally, some limited range of motion in the shoulders, complaints of pain with wrist movements, full range of motion of the hips with complaints of pain with movement, positive fibromyalgia points at the occiput, neck, shoulders, intrascapular, hips, and buttocks for a total of 14 total points, equal and physiologic deep tendon reflexes in the upper and lower extremities, full strength in the upper and lower extremities, and intact hand and finger dexterity. (T. 494-95.) Dr. Figueroa diagnosed fibromyalgia, chronic low back pain, cervicalgia, asthma, and gastroesophageal reflux disease and opined Plaintiff had moderate limitations for repetitive

bending, lifting, carrying, pushing and pulling and she should avoid exposure to smoke, dust, and any respiratory irritants which might aggravate her asthma condition. (T. 495.) The ALJ afforded some weight to Dr. Figueroa's opinion. (T. 17.)

As part of the initial determination in April 2015, consultant Dr. Bhutwala opined Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 60-66.) Dr. Bhutwala indicated the evidence in the file was not sufficient to support allegations of disability and Plaintiff retained the mental RFC for simple work. (T. 66.) The ALJ afforded greater weight to Dr. Bhutwala's determination that Plaintiff retained the mental RFC for simple work. (T. 18.)

In May 2016, primary care physician Dr. Stuppel noted Plaintiff's anxiety/depression, chronic back pain, fibromyalgia, and asthma/allergies and opined these conditions would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 596.) Dr. Stuppel also opined Plaintiff would be off task more than 33 percent of the day and absent more than four days per month, she could sit for six hours of the workday, she should change position every 30 minutes, she could stand/walk for two hours in a work day, and she could occasionally lift up to 10 pounds with these limitations present since 2015. (T. 596-97.) In April 2017, Dr. Stuppel reiterated his previous opinion noting Plaintiff's chronic back pain, fibromyalgia, anxiety/depression, asthma, and Barrett's esophagus. (T. 579-80.) The ALJ afforded little weight to Dr. Stuppel's opinions that Plaintiff should change positions every 30 minutes and her pain and other symptoms would cause off-task time more than 33 percent of the day and more than four absences per month. (T. 17.)

### 3. Analysis

Plaintiff argues the ALJ improperly substituted his judgment for undisputed medical opinions and improperly weighed the medical opinions.  (Dkt. No. 9 at 10-22.)  The Court does not find these arguments persuasive for the following reasons.

   **a.**  Consultative Opinions of Dr. Slowik and Dr. Bhutwala

Plaintiff argues the ALJ substituted his judgment for medical opinions on her ability to work consistently.  (Dkt. No. 9 at 11-12.)  In so doing, Plaintiff points to Dr. Slowik's opined marked impairment to maintaining a regular schedule and Dr. Bhutwala's opined moderate diminishment to Plaintiff's ability to maintain a regular schedule, work consistently, work at a proper work pace and work without interruptions.  (*Id.*; T. 64-66, 488-89.)  Plaintiff also relies on Dr. Stuppel's opined significant disruption to a schedule or more than 33 percent of time off task and more than four absences per month, which is discussed further in Section III.A.3.c of this Decision and Order.  (*Id.*; T. 580.)

   "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations."  *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013); *see also Walker v. Colvin*, 15-CV-0465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.'  This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement[.]")  Indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Tennant v. Comm'r of Soc. Sec.*, 16-CV-0360 (DJS), 2017

WL 1968674, at *8 (N.D.N.Y. May 10, 2017); *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, 16-CV-1207 (WBC), 2017 WL 6001830, at *6 (N.D.N.Y. Dec. 4, 2017). An ALJ may therefore accept portions of a medical opinion that are consistent with the record, and choose not to accept portions that are inconsistent with the record.

Here, the ALJ indicated that Dr. Slowik's opinion was afforded "only some weight because not all of her opinions [were] supported by the record." (T. 18.) The ALJ explained that "her assessment of the claimant's ability to make appropriate decisions and relate adequately with others does not comport with her examination, which found the claimant to have 'adequate' social skills and 'good' judgment." (T. 18, 485-91.) The ALJ further indicated "Dr. Slowik's assessment of the claimant's ability to maintain a regular schedule and appropriately deal with stress is inconsistent with the claimant's treatment history and daily activities." (T. 18.) The ALJ pointed out Plaintiff's lack of specialized mental health treatment and her indication that most of her reported difficulties with daily activities were due to her physical impairments. (*Id*.) The ALJ also pointed to Plaintiff's ability to make and keep her own medical appointments, her reported good relationships with her boyfriend, friends and family members, and her reported activities including self-care tasks, preparing simple meals, some cleaning and shopping, driving, managing finances, reading self-help books, and working part-time. (T. 18, 34, 38, 40, 485-91.)

As the ALJ discussed, Dr. Slowik's opinion was not consistent with other substantial evidence of record, including her own examination, Plaintiff's mental health treatment history, her daily activities, and her reported good social relationships. (T. 18.) For example, Dr. Slowik's consultative examination indicated Plaintiff was cooperative and coherent with adequate social skills, adequate expressive language skills, and a goal-directed thought process. (T. 487.) Dr. Slowik noted Plaintiff had a meaningful, romantic relationship and her family

relationships had not been affected by her mood. (T. 488.) As the ALJ pointed out, Dr. Slowik's assessment was also inconsistent with Plaintiff's lack of specialized mental health treatment, evidenced by Plaintiff's testimony at the administrative hearing indicating she takes medication for depression but had not been to any type of counseling, social worker, psychologist or psychiatrist in the previous two years. (T. 40.) The Court also notes Plaintiff's treatment records with Dr. Stuppel from October 2014 to February 2015 recommended counseling which Plaintiff appears to not have pursued, while newer records with Dr. Stuppel from March 2017 indicated her depression and anxiety were stable. (T. 295, 299, 304, 717.) Between November 2015 and February 2016, Plaintiff reported to another provider that she continued to be stressed about relationships and finances but had decided not to seek counseling at that time. (T. 538, 542, 546, 550, 555.)

In further considering the opinion evidence, the ALJ indicated Dr. Bhutwala's determination that Plaintiff retained the mental RFC for simple work was given greater weight because "it was based upon on his review of the record, which included Dr. Slowik's evaluation" and "state agency and psychological consultants are not only highly qualified in their field, but are also experts in Social Security disability evaluation." (T. 18, 55-68.) Plaintiff maintains the ALJ erred by giving greater weight to Dr. Bhutwala who did not have all the records, but who also nonetheless indicated moderate diminishment in the ability to maintain a regular schedule, to work consistently, to work at a proper pace and to work without interruptions. (Dkt. No. 9 at 11). However, the Court finds that Dr. Bhutwala's opinion was not inconsistent with the ALJ's ultimate RFC determination and did not require the ALJ to adopt greater limitations to the ability to work consistently. Indeed, even while opining Plaintiff had moderate limitations in the ability to maintain a regular schedule, complete a normal workday and workweek without interruptions

13

from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, Dr. Bhutwala still concluded Plaintiff retained the mental RFC for simple work and evidence in the file was not sufficient to support allegations of disability. (T. 65-66.) The ALJ therefore reasonably concluded Plaintiff did not have further supported mental limitations than those he included in the RFC determination. (T. 15.) Further, the ALJ was entitled to rely on this non-examining expert's opinion. *See Frye*, 485 F. App'x at 487; *Little*, 2015 WL 1399586, at *9.

Plaintiff also argues Dr. Bhutwala's use of the term "moderate" is vague and ambiguous, thereby useless and cannot provide substantial support for the ALJ's RFC determination and Dr. Bhutwala's opinion should be given no weight because he never examined or treated Plaintiff and his conclusions are inconsistent with the record showing significant issues with depression, anxiety, and panic. (Dkt. No. 9 at 21-22.) While the term "moderate" may be "vague, and the Commissioner has provided no illuminating term-of-art definitions[,]" the Court does not find Plaintiff's argument that the opinion was useless to be persuasive. *Reynolds v. Colvin*, 13-CV-0396 (GLS/ESH), 2014 WL 4184729, at *4 (N.D.N.Y. Aug. 21, 2014). The ALJ's reliance on Dr. Bhutwala's opinion did not pertain solely to the opined "moderate" limitations, but also on his conclusion that Plaintiff retained the mental RFC for simple work as it was based upon his review of the record including Dr. Slowik's evaluation. (T. 18, 66.) Conversely, Plaintiff utilizes Dr. Bhutwala's opined moderate diminishment of the ability to maintain a regular schedule, work consistently, work at a proper pace, and work without interruptions in her other arguments despite simultaneously indicating such an opinion is vague and useless. (Dkt. No. 9 at 11-12, 20-22.) Further, as discussed above and in Section III.A.3.c of this Decision and

Order, the Court's review does not indicate Plaintiff has generally experienced significant issues with depression, anxiety, and panic.

### b. Dr. Figueroa's Consultative Opinion

Plaintiff similarly argues that the ALJ substituted his judgment for medical opinions on her postural limitations. (Dkt. No. 9 at 12-13.) Plaintiff points out that Dr. Figueroa opined moderate limitation for repetitive bending, lifting, carrying, pushing, and pulling and maintains the ALJ rejected these limitations based on his own interpretation of Dr. Figueroa's examination and one negative lumbosacral x-ray. (*Id*. at 12-13; T. 17, 492-96, 593.) Plaintiff also contends the ALJ omitted or ignored a positive cervical spine x-ray showing stigmata cervical spine spondylosis, records showing degenerative changes at L5-S1 and within the thoracic spine, and an assessment of lower lumbar facet joint disease. (*Id*. at 13; T. 384, 426, 594.)

Again, the ALJ was not required to accept every portion of a consultative examiner's opinion. *Pellam*, 508 F. App'x at 89; *Walker*, 2016 WL 4768806, at *10; *Matta*, 508 F. App'x at 56; *Tennant*, 2017 WL 1968671, at *8; *Allen.*, 2017 WL 6001830, at *6. Here, the ALJ specified that Dr. Figueroa's assessment was afforded "some weight insofar as it is consistent with her clinical findings" but he did not adopt the proposed bending limitations, noting Plaintiff's "straight leg raising test was negative, she had no difficulty rising from a chair, and she needed no help changing for the exam or getting on and off the exam table." (T. 17, 492-96.) The ALJ also noted x-rays of Plaintiff's lumbosacral spine from February 2015 were normal. (T. 17, 593.) In finding Plaintiff could perform sedentary work, the ALJ considered her allegations of body pain and numbness in her arms and wrists. (T. 16.) However, the ALJ was "'not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v.*

*Comm'r of Soc. Sec.*, 14-CV-1139 (GTS/WBC), 2015 WL 9685548, at \*5 (N.D.N.Y. Dec. 11, 2015) (quoting *LaRock ex. rel. M.K. v. Astrue*, 10-CV-1019 (NAM/VEB), 2011 WL 1882292, at \*7 (N.D.N.Y. Apr. 29, 2011)).

Further, the Court does not find Plaintiff's arguments persuasive because, rather than the ALJ substituting his own judgment by "re-interpreting" Dr. Figueroa's examination findings and relying only on the normal lumbosacral x-rays, the ALJ reasonably concluded the record as a whole did not support the bending limitations opined by Dr. Figueroa. (T. 17.) For example, Plaintiff reported significant improvement in April 2015 of her neck and shoulder pain after trigger point injections and osteopathic manipulative treatment; in August and October 2015, she reported working out at the gym and reported she was looking at getting some home gym equipment in January 2016. (T. 513-14, 517-24, 529, 534.)

Plaintiff also argues the ALJ "entirely omits (or fails to discuss) the functional limitations caused by" fibromyalgia pain although the "medical records consistently note significant body wide pain which certainly could impact Plaintiff's ability to bend." (*Id*. at 14; T. 574.) Fibromyalgia is a medically determinable impairment when it is established by appropriate medical evidence. It can be the basis for a finding of disability. SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012). A growing number of courts have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.' *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (citing *Preston v. Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)). The absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Id*. at 109 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Here,

however, the ALJ found Plaintiff's fibromyalgia severe and noted her reports that "'her entire body hurts all of the time from head to toe.'" (T. 13, 16, 492-96.) In considering Dr. Figueroa's opinion, the ALJ noted her observation of 14 positive tender points. (T. 16.) Although the ALJ did not further explicitly discuss Plaintiff's fibromyalgia and related pain, his overall decision indicates he gave it sufficient consideration in determining Plaintiff's RFC for sedentary work with mental limitations. (T. 13-18.)

For the reasons above, the Court finds the ALJ properly considered Dr. Figueroa's consultative opinion as well as Plaintiff's fibromyalgia pain and reasonably concluded that, based on the entire record, further bending limitations were not supported.

### c. Dr. Stuppel's Treating Source Opinion

Plaintiff's also argues that the ALJ erred in weighing Dr. Stuppel's treating opinion and improperly rejected Dr. Stuppel's opined significant disruption to a schedule or more than 33 percent of time off task and more than four absences per month as well as the need to change position. (Dkt. No. 9 at 11-12, 15.)

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

As the ALJ discussed, he gave little weight to Dr. Stuppel's opinions regarding position changes, off-task time, and absences "because they are not supported by the record" and

treatment notes from Dr. Stuppel through Plaintiff's date last insured "generally describe her as being in no acute distress" and these notes "often document normal mental functioning." (T. 579-80, 595-98, 611-728.) The ALJ also pointed to Plaintiff's management of her own household and part-time work doing light cleaning and noted Dr. Slowik's examination finding of only mildly impaired attention and concentration. (T. 17.) The ALJ indicated Plaintiff's "medical records do not reflect a history of her repeatedly missing or arriving late for scheduled appointments" and noted Dr. Stuppel's assessments were "primarily comprised of checkbox form responses, lacking in narrative explanations or references to specific clinical and diagnostic findings to support the particular limitations described." (*Id.*)

Rather than the ALJ substituting his own judgment, the Court's review of the evidence is consistent with the ALJ's analysis and indicates the ALJ properly weighed Dr. Stuppel's opinion with the other evidence of record. (T. 17-18.) As with Dr. Slowik's opinion, Dr. Stuppel's opinion was not consistent with the other evidence of record including his own treatment records documenting Plaintiff's anxiety and depression. For example, although Dr. Stuppel initially stressed counseling to Plaintiff, his later treatment notes indicate Plaintiff was seen for routine follow-up for depression and anxiety and these conditions were stable with medication management. (T. 295, 299, 304, 612, 717.)

Plaintiff also argues the ALJ did not accurately describe her activities of daily living or part-time work and these reasons do not provide substantial support for the ALJ's rejection of Dr. Stuppel's opinion. (Dkt. No. 9 at 17.) Plaintiff testified at the administrative hearing that she performs about four hours of cleaning at a private home twice a month for $400 and she breaks it up into two days. (T. 34, 50-51.) Plaintiff reported to Dr. Slowik in April 2015 that she experienced pain when showering, but continued to participate in that task; struggled with

cooking because of pain when standing for extended periods of time and she generally got pre-made foods; she was generally not cleaning as much due to pain and her boyfriend did the laundry because she could not walk down the stairs where her laundry machine was located; she needed assistance from her boyfriend in the grocery store due to her pain; she managed her own money; she could drive but chose not to due to fatigue and periods of cognitive confusion; and she spent her days reading self-help books. (T. 488.) Plaintiff reported to Dr. Figueroa in April 2015 that she did not do any cooking, cleaning or laundry because her hands hurt and she could not go downstairs to do laundry; she shopped once a week; she showered twice a week because her arms hurt to wash her head; she dressed every day; and she watched television and listened to the radio. (T. 493.) The ALJ noted between her testimony at the hearing and her reports to Dr. Slowik, Plaintiff indicated she performed her own self-care tasks, prepared simple meals, did some cleaning and shopping, drove, managed her finances, read self-help books, and worked part-time. (T. 18, 34, 38, 48-51, 488.) The Court's review of the record indicates the ALJ generally summarized Plaintiff's reported activities and part-time work doing "light cleaning" accurately and reasonably relied on these activities, in part, in determining Plaintiff's supported limitations and finding she could perform sedentary, simple work. (T. 17-18.)

Additionally, although Plaintiff argues the ALJ found "absolutely no diminishment" in her ability to work consistently, either from psychiatric or physical conditions, the Court is not persuaded. (T. 15.) It is clear the ALJ found at least some diminishment in Plaintiff's ability to work consistently because he limited her to simple work and found she could maintain attention and concentration for only simple tasks. (T. 15.) Further, as indicated above, the ALJ indicated why he gave little weight to the limitations opined by Dr. Stuppel, only some weight to Dr. Slowik's opinion, and greater weight to Dr. Bhutwala's determination that Plaintiff retained the

mental RFC for simple work.  (T. 17-18.)  The ALJ reasonably explained greater limitations were not supported by the record and also did not need to discuss the frequency of a sit/stand option where he did not find such a limitation to be supported by the evidence of record.  (*Id*.)

Plaintiff further contends the ALJ did not cite any medical opinion stating Plaintiff does not need to change positions every 30 minutes, would not be off-task 33 percent or more of the time, and/or would not be absent four or more days per month.  (Dkt. No. 9 at 15-16.)  However, the Court notes the ALJ afforded some weight to Dr. Figueroa's opinion in determining Plaintiff's RFC and her opinion does not support Plaintiff's alleged need to change position every 30 minutes.  (T. 17, 492-96.)  The ALJ similarly afforded greater weight to Dr. Bhutwala's opinion, which is contrary to limitations including time off-task of 33 percent or more or four or more absences per month.  (T. 18, 64-66.)  Plaintiff maintains Dr. Bhutwala's opinion is not a contrary opinion to support the decision not to include any limitations to maintaining regular attendance because he found a moderate impairment in maintaining a regular schedule.  (*Id*. at 21.)  However, the Court finds Dr. Bhutwala's opinion is a contrary opinion on which the ALJ properly relied because it indicated Plaintiff retained the mental RFC for simple work despite opining moderate limitations in the ability to maintain a regular schedule, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 18, 66.)

Plaintiff also argues that the ALJ requires too much of Dr. Stuppel's opinion by requiring citations or explanation on the questionnaire itself and that the treating source statement being a "checkbox form" is not a good reason for discounting his opinions.  (Dkt. No. 9 at 17-19.)  Plaintiff contends the ALJ does not hold Dr. Bhutwala's opinion to the same standard, affording

it greater weight even though it does not provide supporting explanation or citations. (*Id.* at 20-21.) However, as discussed above, the ALJ provided another sufficient reason for rejecting Dr. Stuppel's opinion in reasonably finding that it was not supported by the record. (T. 17.) Further, Dr. Bhutwala's assessment does include additional explanation. (T. 66.) Rather than simply rejecting the only medical evidence he cited as Plaintiff contends, Dr. Bhutwala's additional explanation indicates Plaintiff's alleged severity of her impairment was not fully supported by the evidence in the file and she "presented as more impaired at the consultative examination." (Dkt. No. 9 at 21; T. 66.) Dr. Bhutwala also concluded that there was "a lack of internal consistency between" Plaintiff's presentation at the consultative examination and what was indicated through the objective evidence. (T. 66.) The ALJ appears to have reasonably reached the same conclusion after considering all the evidence of record. (T. 15-18.)

For the reasons above, the Court finds the ALJ's analysis of Plaintiff's RFC, including her mental and physical limitations, and the medical opinions is supported by substantial evidence. Remand is therefore not required on these bases.

**A.** The ALJ's Step Five Determination

1. Applicable Law

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert*." Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational]

guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

## 2. Analysis

At Step Five, the ALJ found there were jobs existing in significant numbers that Plaintiff could have performed through the date last insured. (T. 19.) Specifically, the ALJ indicated Plaintiff's limitations did not preclude her from performing all the basic mental requirements of unskilled work on a sustained basis and a finding of "not disabled" was appropriate under SSR 85-15 and the framework of Medical-Vocational Rule 201.21. (*Id.*) Plaintiff contends the Step Five determination is not supported by substantial evidence because the ALJ failed to consult with a vocational expert despite significant non-exertional impairments including the need for a frequent sit-stand option, limitations to bending, and limitations to work pace and attendance. (Dkt. No. 9 at 22-23.)

As Defendant argues, "[a]lthough the [Medical-Vocational Guidelines ("Grids")] direct findings based on physical limitations, if the claimant can perform the full range of unskilled sedentary work, as in the instant case, the ALJ may rely on the [G]rids." (Dkt. No. 10 at 7; citing 20 C.F.R. Pt. 404, Subpt. P., App'x 2 § 201.00(a); *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009); SSR 96-9p, 1996 WL 374185, at *9; SSR 85-15.) Indeed, the ALJ's finding that Plaintiff had non-exertional limitations did not automatically bar him from relying on the Medical-Vocational Guidelines. *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). Plaintiff has not established further alleged limitations including the need for a frequent sit-stand

option, limitations to bending, and limitations to work pace and attendance. For the reasons stated above, the Court finds the ALJ's RFC determination is supported by substantial evidence. The Court similarly finds the ALJ's Step Five determination is supported by substantial evidence and remand is therefore not required on this basis.

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>** in part; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

      **ORDERED** that Plaintiff's Complaint is **<u>DISMISSED</u>**.

Dated: March 18, 2020
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge